**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GILES K.J. MANLEY,                      )
                                        )
        Petitioner,                 )          3:11-cv-00354-HDM-RAM
                                        )
vs.                                     )          **ORDER**
                                        )
ELY STATE PRISON WARDEN, *et al.*,      )
                                        )
        Respondents.                )
                                        )
_____/

      This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding with representation of counsel. Before the court is respondents' motion to dismiss the petition (ECF No. 37), which has been fully briefed. Also pending is petitioner's motion to conduct discovery (ECF No. 38), and his motion for stay and abeyance (ECF No. 51). These motions are also fully briefed.

**I.    Procedural History**

      A.    <u>Conviction and Direct Appeal</u>

      In June of 2002, Giles Manley was seventeen years old when he was charged, through indictment, with twelve felonies including burglary, first degree kidnapping with use of a deadly weapon (with use), three counts of robbery with use, open murder with use, attempted murder with use, three counts of attempted first degree kidnapping with use, open murder and possession of stolen property.

Ex. 8.[1]

On March 27, 2003, represented by public defenders Joseph K. Abood and Nancy Lemcke, petitioner entered a guilty plea to all twelve counts, with the agreement that the state would not pursue the death penalty, but allowing for maximum sentencing on all counts to run consecutive. Ex. 19.

On May 15, 2003, petitioner was sentenced as the plea agreement set forth. Ex. 21. However, prior to sentencing, petitioner advised the court that he wished to withdraw his guilty plea and to proceed to trial. Ex. 21. This request was denied and the court directed petitioner's defense counsel to prepare a notice of appeal. *Id.*

The appeal was filed on June 26, 2003, and raised the following grounds for relief:

(1)     Whether the district court erred in denying manley's motion to withdraw his plea of guilty prior to sentencing.

(2)     Whether Manley was denied effective assistance of counsel in the entry of his guilty plea. Ex. 29.

The Nevada Supreme Court affirmed the conviction on June 3, 2004, (ex. 35) and remittitur issued on June 29, 2004. Ex. 36.

B.     First Post-Conviction Proceeding

Petitioner filed his initial post-conviction petition on September 29, 2004. Ex. 37. A supplemental petition was filed on November 8, 2004, raising grounds of ineffective assistance of counsel. Ex. 39. After a short hearing on the petition, the court denied it on its merits and later entered written findings of fact, conclusions of law and order. Ex. 43.

Petitioner appealed through retained counsel. Ex. 46. On appeal, petitioner raised claims that the lower court erred in failing to appoint counsel to assist petitioner on post-conviction and that the guilty plea was entered based on the understanding that he could later withdraw the plea if the law on capital punishment for juveniles changed. Ex. 48.

---

[1] The exhibits referenced in this order were submitted by petitioner in support of his First Amended Petition or in support of his opposition to the motion to dismiss and are found in the court's docket at entries 31-34, 41, 49 and 56. They are identified in continuing numerical order.

1    The Nevada Supreme Court reversed the denial of the petition and remanded the case to be

2    reheard with the assistance of counsel.  Ex. 51.  Remittitur on this appeal issued on December 13,

3    2005.  Ex. 52.  After counsel Anthony Goldstein (Goldstein) was appointed and an evidentiary

4    hearing was set.  Thereafter, on March 13, 2006, an amended and supplemental petition was filed

5    raising the claim that continued incarceration of petitioner would be unlawful until he was permitted

6    to withdraw his guilty plea based on a manifest injustice because, (1) petitioner was denied the

7    effective assistance of counsel during the criminal proceedings, and (2), because after the petitioner's

8    guilty plea was entered, the law on executing juveniles had been abolished.  Ex. 53.

9    After the evidentiary hearing held on July 19, 2006 (Ex. 54), counsel filed a second amended

10    and supplemental petition raising the following additional ground:

11            In weighing the credibility of the witnesses who testified for the
              petitioner at the evidentiary hearing on this matter, the court must
12            consider the witnesses' motivations and prior inconsistent and
              outright irreconcilable statements to counsel.

13

14    Ex. 55.  On September 7, 2006, the court conducted a hearing and announced its decision to deny

15    petitioner relief.  Ex. 57.  A written order was filed on September 26, 2006.  Ex. 58. An appeal

16    followed.  Ex. 60.

17    On appeal, petitioner claimed:

18            I.      The district court was clearly erroneous in finding that
                      appellant's public defenders never told appellant that he
19                    would be able to withdraw his plea if Nevada law ever
                      changed to prohibit the execution of juveniles.

20

21                    A.      Public defendant Joseph K. Abood's testimony at the
                              evidentiary hearing was irreconcilably contradictory,
22                            self-serving and intended to protect his professional
                              interests rather than those of appellant.

23    Exhibit 62.  The denial was affirmed by the Nevada Supreme Court on July 17, 2007.  Ex. 65.

24    Remittitur issued August 14, 2007.  Ex. 66.

25            C.      Second Post-Conviction Proceeding

26    Petitioner pursued a second state post-conviction writ through retained counsel G. Luke

3

1   Ciciliano (Ciciliano).  Ciciliano filed the second state petition on or about April 30, 2008, although

2   he was received petitioner's signed retainer agreement in September 2007.  Exs. 1 and 126.  On July

3   16, 2008, the petition was filed arguing that petitioner was prejudiced by post-conviction counsel's

4   ineffective assistance and petitioner should be permitted to withdraw his plea due to a change in the

5   law.  Ex. 71.

6        This petition was denied at a hearing conducted on November 20, 2008.  Ex. 79.  A written

7   order was entered on December 11, 2008.  Ex. 80.  On appeal, petitioner raised the same claims as

8   below: post-conviction counsel was ineffective and petitioner should be permitted to withdraw his

9   guilty plea due to the change in the law.  Ex. 83.  The Nevada Supreme Court affirmed the denial on

10  April 8, 2010, and remittitur followed on May 4, 2010.  Exs. 86 and 87.

11       C.     Federal Proceedings

12       Petitioner commenced this action on May 12, 2011, when he mailed his original pro se

13  petition to the court.  Counsel was appointed and a first amended petition was filed on January 7,

14  2013.  ECF No. 30.[2]  The amended petition raises five grounds for relief.  Respondents move to

15  dismiss the petition because it is untimely and it contains unexhausted claims.

16  **II.**    **Discussion**

17       A.     Timeliness

18       A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be filed within one

19  year of the date when the petitioner's conviction become final.  28 U.S.C. § 2244(d)(1)(A-D).  The

20  AEDPA limitations period is tolled while a "properly filed application" for post conviction or other

21  collateral relief is pending before a state court.  28 U.S.C. § 2244(d)(2).  A "properly filed

22  application" is one in which the "delivery and acceptance are in compliance with the applicable laws

23  and rules governing filings."  *Dictado v. Ducharme,* 244 F.3d 724, 726-27 (9th Cir. 2001), *quoting*

24  *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 364 (2000).

25

26         [2] With leave of the Court, petitioner filed his amended petition and various portions or the record under seal due to the confidential nature of facts supporting his claims.

1    In this instance, petitioner's conviction became final ninety days after the entry of the order

2    of affirmance on direct appeal, or September 1, 2004.  Petitioner expired at least 28 days before

3    initiating his first post-conviction proceeding on September 29, 2004. Ex. 37.[3]  The statute of

4    limitations period was tolled while the initial post-conviction proceedings continued through appeal,

5    remand and second appeal.  When the remittitur issued on the appeal of the initial proceedings on

6    August 14, 2007, the limitations clock resumed.

7    The second post-conviction proceeding, filed by attorney Ciciliano on April 30, 2008, did not

8    toll the limitations period.  It was denied as untimely by the Nevada Supreme Court.  Ex. 86. An

9    untimely petition is not considered "properly filed" for tolling purposes. *Allen v. Siebert*, 552 U.S. 3,

10   6, 128 S.Ct. 2, 4 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417, 125 S.Ct. 1807 (2005).

11   Thus, that period of time was not tolled and the federal petition was filed 1,392 days after his

12   conviction became final.  It is untimely.

13   Petitioner argues that he is entitled to equitable tolling of the limitations period.

14   B.    Equitable Tolling

15   The AEDPA limitations period is also subject to equitable tolling.  *See Holland v. Florida*,

16   560 U.S. ____, 130 S.Ct. 2549, 2560 (2010); *Calderon v. United States District Court* (*Beeler*), 128

17   F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds*, *Calderon v. United States*

18   *District Court* (*Kelly*), 163 F.3d 530 (9th Cir. 1998).  *Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001)

19   contains a clear statement of the basic law governing equitable tolling of the AEDPA statute of

20   limitations:

21           As we have previously held, "[w]hen external forces, rather
         than a petitioner's lack of diligence, account for the failure to file a
22           timely claim, equitable tolling of the statute may be appropriate."
         *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also*

23

24   ───────────────

     [3] The First Amended Petition indicates that the original petition alleged ground for relief.  However, the
25   copy of the exhibit referenced as that petition does not raise such grounds.  Rather, it seeks appointment of
     counsel.  A supplemental petition, which was filed on November 8, 2004 does raise claims.  *Cf* Exs. 37 and 39.
26   Respondents argue that this should be the true date that statutory tolling commenced, expiring 68 days.  However,
     this calculus will not impact the outcome of the motion to dismiss, as petitioner acknowledged that more than
     one year expired before he filed his federal habeas action.  *See* Opposition to Motion to Dismiss, p. 4.

*Calderon v. United States Dist. Court (Kelly)*, 128 F.3d 1283, 1288-89 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court*, 163 F.3d 530 (9th Cir. 1998) (en banc) (petitioner entitled to equitable tolling where petitioner's counsel withdrew and left replacement counsel with unusable work product that made timely filing impossible); *Kelly*, 163 F.3d at 541-42 (petitioner entitled to equitable tolling because the district court ordered a stay preventing petitioner's counsel from filing a timely habeas petition and because petitioner was allegedly mentally incompetent).

*Tillema*, 253 F.3d at 504.  The Ninth Circuit's rule allowing equitable tolling in habeas actions was later confirmed by the United States Supreme Court in *Holland v. Florida*, 130 S.Ct. 2549, 2563 (2010).

The Ninth Circuit Court of Appeals has made clear that equitable tolling is unavailable in most cases.  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).  Equitable tolling is only appropriate "if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time."  *Miranda*, 292 F.3d at 1066 (*quoting Calderon v. United Stated Dist. Court (Beeler)*, 1289 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998)(*en banc*))(emphasis in original).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda*, 292 F.3d at 1066 (*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.), *cert. denied*, 531 U.S. 878 (2000)).

          1.   *Extraordinary Circumstances Beyond Petitioner's Control*

Petitioner argues that the ineffective assistance of his state post-conviction counsel and his mental impairments are extraordinary circumstances beyond his control.

          a.   Ineffective Post-Conviction Counsel

In certain circumstances, the misconduct of counsel can, if sufficiently egregious, justify equitable tolling.  *Holland,* 130 S.Ct. at 2564-65. In *Holland*, the United States Supreme Court discussed various instances where courts had found that counsel's failure warranted equitable tolling of the limitations period.  For example, the Court favorably cited *Nara v. Frank*, 264 F.3d 310, 320

1    (C.A.3 2001) (ordering hearing as to whether client who was "effectively abandoned" by lawyer

2    merited tolling); *Calderon v. United States Dist. Ct. for Central Dist. of Cal.*, 128 F.3d 1283, 1289

3    (9th Cir. 1997) (allowing tolling where client was prejudiced by a last minute change in

4    representation that was beyond his control); *Baldayaque v. United States*, 338 F.3d 145152–153 (2d

5    Cir. 2003) (finding that where an attorney failed to perform an essential service, to communicate

6    with the client, and to do basic legal research, tolling could, under the circumstances, be warranted);

7    *Spitsyn v. Moore*, 345 F.3d 796, 800–802 ((th Cir. 2003) (finding that "extraordinary circumstances"

8    may warrant tolling where lawyer denied client access to files, failed to prepare a petition, and did

9    not respond to his client's communications); *United States v. Martin*, 408 F.3d 1089, 1096 (8th Cir.

10   2005) (client entitled to equitable tolling where his attorney retained files, made misleading

11   statements, and engaged in similar conduct) as examples of attorney error warranting equitable relief

12   from the statute of limitations.  The Court stressed that each situation must be considered on its own

13   facts and in its own context.  *Holland*, 130 S.Ct. at 2563 *citing Baggett v. Bullitt*, 377 U.S. 360, 375,

14   84 StCt. 1316 (1964).

15        Here, petitioner argues that his original post-conviction counsel, Goldstein, failed to advise

16   him of his federal habeas rights or the guidelines for filing such a petition. He also contends that he

17   believed attorney Ciciliano was preparing a federal habeas petition, but Ciciliano instead filed a

18   second post-conviction petition in the state court, which had no effect on the limitations period

19   because it was ruled untimely and successive by the state courts.

20        Attorney Goldstein was appointed to represent petition on the Nevada Supreme Court's order

21   when it remanded the case for counsel and an evidentiary hearing.  Ex. 124.  Petitioner states that he

22   met with Goldstein for the first time at the evidentiary hearing on his post-conviction petition.  Ex.

23   120. Petitioner notes that Goldstein withdrew from representation on August 15, 2007, the day after

24   remittitur was issued in the post-conviction appeal. Ex. 120; *see also* Exs. 66 and 67. Goldstein later

25   admitted that he had not advised petitioner of his federal habeas rights and obligations.  Ex. 124.

26        Next, petitioner, through his mother, Shari Moore, hired attorney Ciciliano.  Petitioner signed

1   a retainer agreement on September 27, 2007.  Ex. 126.  He believed Ciciliano would take care of

2   whatever needed to be filed, includig the federal habeas petition.  Exs. 117 and 120.  Petitioner spoke

3   with Ciciliano no more than three times, and the attorney never discussed the option of a federal

4   habeas petition, referring only to state post-conviction options. *Id.*  In his declaration, Cicliano

5   acknowledged he had plenty of time to pursue the federal petition when he was first contacted by

6   Ms. Moore.  Ex. 123.  Ciciliano took no steps to pursue the federal petition, despite the retainer

7   agreement, signed in September of 2007, until he heard back from Ms. Moore. *Id.*  By that time, the

8   one-year had expired and Ciciliano believed the only option was to file a second state action. *Id.*

9   Ciciliano did not advise petitioner of his federal habeas rights and allowed the full year to pass

10  without filing a federal petition. Ex. 120.  Petitioner was unable to confer with Ciciliano because the

11  attorney did not respond to any of his calls. *Id.*

12      For her part, petitioner's mother believed that Ciciliano was going to prepare and file the

13  federal petition. Ex. 117.  While the second state action was pending, Ms. Moore moved out of state

14  and soon learned that no federal petition had been filed. *Id.* Once Ms. Moore was able to reach

15  Ciciliano, he advised her that he was no longer handling "such" cases. *Id.*  Ciciliano also advised Ms.

16  Moore that he would be unable to provide her with a full copy of petitioner's file because it had been

17  misplaced in a move. *Id.*

18      These facts demonstrate the lack of effective representation by these two attorneys. In

19  particular, Goldstein's failure to communicate to petitioner the importance of timely preparation and

20  filing of the federal petition, and Ciciliano's failure to timely prepare and file the federal petition

21  when he was retained with plenty of time to do so, taken together with each attorney's failure to

22  communicate effectively with petitioner about his case or his claims,  represent circumstances that

23  were beyond petitioner's control.  When viewed in combination with petitioner's lack of education

24  and his apparent cognitive deficits discussed *infra.* and acknowledged by both attorneys (*see* Exs.

25  123 and 124), the counsels' performance do not suggest merely ordinary negligence and lack of

26  attention that might be excusable neglect.

1     b. Mental Impairment

2   Petitioner also argues that he suffers from severe mental impairment.

3   Equitable tolling may be allowed when a petitioner can show a mental impairment so severe

4 that the petitioner was unable personally either to understand the need to timely prepare or file a

5 habeas petition, and that impairment made it impossible under the totality of the circumstances to

6 meet the filing deadline despite petitioner's diligence. *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir.

7 2010).

8   A petitioner relying on a mental impairment must meet a two part test to qualify for equitable

9 tolling. *Id.* First, he must show his mental impairment was an "extraordinary circumstance" beyond

10 his control by demonstrating the impairment was so severe that either

11   a) he was unable rationally or factually to personally understand the need to timely file, or

12   (b) his mental state rendered him unable personally to prepare a habeas petition and

13 effectuate its filing. *Id.* at 1099.

14   Second, the petitioner must "show diligence in pursuing the claims to the extent he could

15 understand them, but that the mental impairment made it impossible to meet the filing deadline

16 under the totality of the circumstances, including reasonably available access to assistance." *Id.*

17 *citing Holland*, 130 S.Ct. at 2562.  The mental impairment can have its effect on either the

18 knowledge that such a petition can and must be filed or on the ability to prepare and file the petition

19 despite the understanding that it must be done to preserve the right to a federal review.  *Bills,* 628

20 F.3d at 1011.  It is the totality of the circumstances that come to bear on the court's decision.

21   Petitioner argues that his cognitive limitations are the results of the time in utero and during

22 his childhood in which he suffered under the influence of his mother's drug, alcohol and physical

23 abuse.  He contends his unstable living arrangement, which involved many moves and enrollment in

24 more than fifteen schools before he dropped out in the ninth grade, resulted in his deficient education

25 and notable ignorance.  Exs. 100, 116 and 117.  Petitioner provides documentary and testimonial

26 evidence that he and his younger brother spent time in the custody of child protective services (Ex.

1  98) and he had difficulty conforming his behavior to the expectations of society.[4]  Petitioner was

2  frequently responsible for caring for his younger brother, he had no friends and suffered instability in

3  his family constellation when his mother's boyfriend, petitioner's only "father-figure," moved out of

4  the house without explanation.  Petitioner started using drugs and alcohol himself at a young age and

5  his mother frequently applied physical force in her attempts to control him.  *See generally* Exs. 89-

6  117.

7        At the time the 17-year old petitioner was arrested for the instant offenses, in May of 2002,

8  he was homeless; living on the streets or in the homes of friends.  Ex. 15.  During the criminal

9  proceedings, petitioner was evaluated by a clinical psychologist and a psychiatrist to determine his

10  mental and intellectual levels.  Thus, his impairment was evident to his trial counsel.  Petitioner was

11  assessed to have an IQ of only 80, although the doctor did not administer a "comprehensive

12  neurological exam" to determine if he suffered from brain damage or "other cognitive deficits."  Ex.

13  101.

14        Prior to trial, counsel moved to preclude the imposition of the death sentence based on

15  petitioner's low IQ, his "poor coordination, disrupted school experiences, inappropriate sexual

16  behavior as a child and a history of depression and homelessness."  Ex. 15.  Both of petitioner's

17  post-conviction counsel found petitioner to be of limited intelligence.  Goldstein observed that

18  petitioner had very little to offer in terms of litigating his habeas petition.  He was very young and

19  seemed to have difficulty learning.  He was detached, subdued and quiet..." Ex. 124.  Ciciliano

20  found petitioner's cognitive functioning to be "very poor."  Ex. 123.  He found petitioner to be "very

21  suggestible and obedient, particularly when it came to his mother."  *Id.*

22        In the course of these proceedings, petitioner has also recently undergone a comprehensive

23  two-day examination by a neuropsychologist who found petitioner to have an IQ of 79 - within the

24  Borderline range of intelligence.  Ex. 101.  The doctor's evaluation also revealed an academic history

25

26  _____

        [4] Numerous documents, including the First Amended Petition, have been filed under seal.  Those documents provide a detailed outline of petitioner's childhood.

"marked by poor performance and limited achievement" and "severe learning problems" exacerbated by a lack of academic or family support. *Id.* at 18. The evaluator opined that petitioner suffers from congenital brain damage possibly attributable to his mother's drug and alcohol abuse and exacerbated by petitioner's own abuse of controlled substances during his childhood. *Id.* at 19-21.

The doctor opined that individuals with similar profiles are "known to be at greater risk to use poor judgment...particularly when impacted by a superimposed lower than average intellect and limited support systems." Ex. 101 at 21. These circumstances, according to the doctor's report, suggest a likely difficulty in understanding complex legal constructs and instruments...." *Id.* at 23.

Petitioner represents that he has attempted to learn about the law and to comply with the procedural rules, but that he has been unable to understand a lot of it even when others attempt to explain the concepts to him. He states in his declaration, "To be honest, I still don't even understand that 'habeas' is, let alone the difference between state and federal habeas." Ex. 120.

The neuropsychologist's report of petitioner's evaluation supports this statement. *see e.g.* Ex. 101, p. 11 ("[S]ubtests were administered to assess basic reading skills, reading speed and comprehension. On these measures, his performance fell... he is able to read and decode words at ninth grade level, yet his reading comprehension is at sixth grade level"). Petitioner's intellectual score– his IQ– tested at 79. *Id.* The doctor did not conclude that petitioner was "in a range consistent with mental deficiency (mental retardation)," he did emphasize, however, that petitioner "functioned categorically in the Borderline range, just above that found in individuals with mental deficiency..." with "significant pragmatic and relevant repercussions including the fact that individuals with such scores may exhibit poor judgment, reasoning, and planning in spite of the fact that their intellect is not in the impaired range." *Id.* at 18.

The doctor found the testing supported a hypothesis of organic brain damage, *id.* at 21, and that petitioner likely suffered from a "diminished capacity to plan, establish or coordinate long-term goals, particularly protracted aims and objectives..." *Id.* at 22. Petitioner was said to likely have

difficulty in assisting legal counsel in forensic proceedings and deliberations," and "have problems

comprehending complex legal concepts and constitutional rights."

The doctor concluded:

> [I]t is my opinion that several factors played a major role.
> First his Borderline intellect appears to have played a significant
> role.  In fact, it is a well known fact that individuals with such low
> intellectual levels have a poor sense of time representation.
> Similarly, it is most probable that his history of psychopathology not
> excluding depression (mental illness), as well as his deficits in
> executive skills marked by poor planning, self-monitoring, and
> organization skills also played major roles in his tardy response [in
> the federal habeas action] in addition to a lack of legal assistance.
> Finally, his developmental stage (not chronological age) and its
> impact on his sense of timing and structure at the time he was
> supposed to have filed his petition, together with the facts noted
> above, most likely impacted his ability to comprehend the
> requirements of 28 USCS 2244(d) associated with the "1-year period
> of limitations' during which this defendant had to file his federal
> petition.

Ex. 101, p. 24.

Petitioner has presented evidence which demonstrates that he suffers from a mental or

cognitive impairment so sever that it would prevent him from understanding the need to timely file

his federal habeas petition as well as prevent him from preparing such a petition on his own in order

to have it filed in a timely manner.  *See Bills, v. Clark*, 628 F.3d at 1093.  Moreover, the chronology

provided indicates that petitioner took steps, most often through his mother, to obtain counsel that he

believed was preparing his federal petition. When the petition went unfiled and the second state post-

conviction petition was unsuccessful, petitioner's attempts to contact his attorney were ineffective.

Counsel refused his calls.

Petitioner is entitled to equitable tolling of the statute of limitations and the petition shall not

be dismissed on the basis that it was untimely filed.

B.    Exhaustion

Next, respondents argue that certain grounds of the First Amendment Petition are

unexhausted and therefore, the petition should be dismissed in its entirety.  Petitioner counters that

he is entitled to a stay and abeyance of these federal proceedings in order to allow him to exhaust all

12

1  the claims in his petition.

2      A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has

3  exhausted his available state remedies for all claims raised.  *Rose v. Lundy*, 455 U.S. 509 (1982); 28

4  U.S.C. § 2254(b).[5]  State remedies have not been exhausted unless the claim has been fairly

5  presented to the state courts.  *Carothers v. Rhay*, 594 F.2d 225, 228 (9th Cir. 1979).  To fairly

6  present a federal claim to the state court, the petitioner must alert the court to the fact that he asserts

7  a claim under the United States Constitution. *Castillo v. McFadden,*  399 F.3d 993, 999 (9th Cir.

8  2005),  *citing Duncan*, 513 U.S. at 365-66.  The petitioner must make the federal nature of the claim

9  "explicit either by citing federal law or the decisions of the federal courts." *Lyons v. Crawford*, 232

10  F.3d 666, 668 (9th Cir. 2000), *amended*, 247 F.3d 904 (9th Cir. 2001).  Additionally, a pro se

11  petitioner may exhaust his claim by citing to State case law which applies the federal standard.

12  *Peterson v. Lampert,* 319 F.3d 1153, 1158 (2003) ("citation to a state case analyzing a federal

13  constitutional issues serves the same purpose as a citation to a federal case analyzing such an issue").

14      The mere similarity of claims of state and federal error is insufficient to establish exhaustion.

15  *Hiivala*, 195 F.3d at 1106, *citing Duncan*, 513 U.S. at 366; *see also Lyons*, 232 F.3d at 668-69;

16  *Shumway v. Payne,* 223 F.3d 982, 987 (9th Cir. 2000).  "[G]eneral appeals to broad constitutional

17  principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

18  establish exhaustion." *Hiivala*, 195 F.3d at 1106, *citing Gray v. Netherland*, 518 U.S. 152, 162-63

19

20  [5] 28 U.S.C. § 2254(b) states, in pertinent part:

21  An application for a writ of habeas corpus on behalf of a person in custody
   pursuant to the judgment of a State court shall not be granted unless it appears

22  that: (A) the applicant has exhausted the remedies available in the courts of the
   State; or (B)(i) there is an absence of available state corrective process; or (ii)

23  circumstances exist that render such process ineffective to protect the rights of
   the applicant.

24                                     * * *

25  (c) An applicant shall not be deemed to have exhausted the remedies available

26  in the courts of the State, within the meaning of this section, if he has the right
   under the law of the State to raise, by any available procedure, the question
   presented.

1  (1996); *see also Shumway*, 223 F.3d at 987.

2       Petitioner acknowledges that he has certain unexhausted claims in his petition.[6]  He argues

3  that he is entitled to a stay and abeyance based on his appellate and post-conviction counsels'

4  ineffective performance and because of his mental impairments. In *Rhines v. Weber*, the Supreme

5  Court placed some limitations upon the discretion of this court to facilitate habeas petitioners' return

6  to state court to exhaust claims.  The Rhines Court stated:

7          [S]tay and abeyance should be available only in limited
8      circumstances.  Because granting a stay effectively excuses a
       petitioner's failure to present his claims first to the state courts, stay
9      and abeyance is only appropriate when the district court determines
       there was good cause for the petitioner's failure to exhaust his claims
10     first in state court.  Moreover, even if a petitioner had good cause for
       that failure, the district court would abuse its discretion if it were to
       grant him a stay when his unexhausted claims are plainly meritless.
11     *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas
       corpus may be denied on the merits, notwithstanding the failure of
12     the applicant to exhaust the remedies available in the courts of the
       State").

13

14  Rhines, 544 U.S. at 277.

15      As discussed above, both of these factors are considered significant in hindering petitioner's

16  ability to timely and effectively present his claims to this court.  The motion for stay and abeyance

17  shall be granted.  Petitioner may return to this court and move to reopen this action, under the same

18  case number, and before the same undersigned United States District Court Judge, after exhausting

19  his state court remedies with respect to his unexhausted claims.

20      Upon his return to state court, petitioner must exhaust *all* of his remaining unexhausted

21  claims.  When petitioner returns to this court and seeks to reopen this case, he must be ready to file

22  an amended petition containing *only exhausted claims*.  If petitioner returns to this court and files an

23  amended petition that is mixed, *i.e.* one that contains unexhausted claims, the court's intention is that

24  it *will not* facilitate another return to state court by petitioner; rather, the court will require petitioner

25

26      [6] The issue of exhaustion need not be considered at length herein, as petitioner has admitted in his statement of exhaustion in the First amended Petition that various of the claims were presently before the Nevada Supreme Court in a concurrent post-conviction proceeding.  *See* First Amended Petition, pp. 16, 22, 24 and 27.

14

1   to abandon his unexhausted claims, or his mixed amended petition will be dismissed.  In essence:

2   this will be the last time that this court will allow petitioner to return to state court to exhaust claims.

3   **II.        Motion for Discovery**

4           Petitioner also moved the court a second time to permit discovery (ECF No. 38) in order to

5   address procedural defenses raised in the motion to dismiss.  The original motion was opposed and

6   ultimately denied without prejudice. This motion was also opposed by respondents.

7            In habeas corpus actions, discovery is regulated by Rule 6 of the Rules Governing Section

8   2254 Cases.  Rule 6 provides that discovery in habeas corpus actions may be invoked only after

9   obtaining leave of court and upon a showing of good cause.  Rule 6(a) states: "A judge may, for

10  good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and

11  may limit the extent of discovery."  In this instance, however, it appears that the necessary

12  documents have been obtained and the procedural defenses adequately addressed without an order

13  from the Court.  As a result, this motion shall be denied as moot.

14          **IT IS THEREFORE ORDERED** that the motion to dismiss (ECF No. 37) is **DENIED** as

15  to the question of timeliness and **GRANTED** as to the question of exhaustion of grounds 1B and

16  grounds 3, 4 and 5.[7]

17          **IT IS FURTHER ORDERED** that petitioner's second motion to conduct discovery (ECF

18  No. 38) is **DENIED** without prejudice as moot.

19          **IT IS FURTHER ORDERED** that petitioner's motion to stay proceedings (ECF No. 51) is

20  **GRANTED**.

21          **IT IS FURTHER ORDERED** that this action is **STAYED** pending exhaustion of the

22  unexhausted claims contained in the instant federal petition.  Petitioner may move to reopen the

23  matter following exhaustion of the claim.

24          **IT IS FURTHER ORDERED** that the grant of a stay is conditioned upon petitioner filing a

25

26          [7] The court concludes from a comparison of the state claims to the federal claims that grounds 1A(2) and 2A are exhausted.

state post-conviction petition or other appropriate proceeding in state court within **forty-five (45) days** from the entry of this order and returning to federal court with a motion to reopen and an amended petition incorporating the dismissed grounds for relief within **forty-five (45) days** of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of the state court proceedings.

**IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a motion by respondents if petitioner does not comply with the time limits in this order, or if he otherwise fails to proceed with diligence during the stay imposed pursuant to this order.

**IT IS FURTHER ORDERED** that the Clerk shall **ADMINISTRATIVELY CLOSE this action, until such time as the court grants a motion to reopen the matter.**

Dated this 27th day of August, 2013.

_____
UNITED STATES DISTRICT JUDGE