# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

GILES MANLEY,

    Petitioner,

v.

WARDEN HIGH DESERT STATE PRISON, et al.

    Respondents.

3:11-cv-00354-HDM-WGC

**ORDER**

This matter comes before the court on respondents' motion to dismiss petitioner's second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 68). Petitioner has opposed (ECF No. 76), and respondents have replied (ECF No. 81).

**Background**

Petitioner in this action challenges his 2003 state court conviction, pursuant to a guilty plea, on several counts, including burglary, kidnaping with use of a deadly weapon, and murder, and consequent sentences that include life imprisonment without the possibility of parole. (ECF No. 6; Exs. 19 & 23).[1]

Petitioner initiated this action on May 12, 2011, with the filing

---

[1] The state court record exhibits cited in this order are located at ECF Nos. 31-33.

of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* ECF No. 6). On June 16, 2011, the court screened the petition, appointed counsel, and granted counsel leave to file a first amended petition. (ECF No. 7). The Federal Public Defender entered a notice of appearance on petitioner's behalf on July 15, 2011. (ECF No. 9).

Following several extensions of time, counsel filed a first amended petition on January 7, 2013 – nearly eighteen months after filing a notice of appearance in this case. (ECF No. 30). Respondents moved to dismiss the first amended petition as, *inter alia*, untimely. (ECF No. 37). The court ultimately denied the motion to dismiss on timeliness grounds, finding that petitioner was entitled to equitable tolling. (ECF No. 58). As the court also found that the first amended petition contained unexhausted claims and that there was good cause for the failure to exhaust the claims in state court before filing the federal petition, the court granted petitioner's motion to stay and abey so that petitioner could return to state court. This case was accordingly administratively closed. (*Id.*)

On February 17, 2017, petitioner moved to reopen following the Nevada Supreme Court's issuance of remittitur on the appeal of his third state habeas petition. (ECF No. 61). At the same time, he filed his second amended petition, which is the operative petition in this case. (ECF No. 62). Respondents move to dismiss the second amended petition on the grounds that most claims are untimely and several claims are procedurally defaulted. (ECF No. 68).

**Timeliness**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal

2

habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

A claim in an amended petition that is filed after the expiration of the one-year limitation period will be timely only if the claim relates back to a timely-filed claim pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as the timely claim. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the Supreme Court held that habeas claims in an amended petition do not arise out

3

of "the same conduct, transaction or occurrence" as prior timely claims merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. 545 U.S. at 659 & n.5.

Respondents move to dismiss the second amended petition on the grounds that it was filed after the expiration of the statute of limitations and does not relate back to any timely filed petition. Specifically, although the parties agree that the second amended petition is substantially identical to the first amended petition, respondents again argue that the first amended petition is untimely and argue – for the first time – that the claims in the first amended petition cannot be considered timely as they do not relate back to the original *pro se* petition.

The court's order on the respondents' prior motion to dismiss rested on an implicit holding: that equitable tolling excused the untimely filing of both the original petition *and* the first amended petition. Otherwise, the court's granting of a stay to exhaust the claims in the first amended petition, which do not appear in the original petition and largely do not relate back to it, would have

4

been meaningless. (*See* ECF No. 58). Respondents never argued, at any time before the stay was granted or within a reasonable period of time thereafter, that even if the original petition were timely the claims in the first amended petition were not. The petitioner relied on the court's order and respondents' failure to otherwise object in staying his petition and returning to state court to exhaust his claims. Under these circumstances, even assuming the court were inclined to revisit its earlier, implicit holding extending equitable tolling to the first amended petition, the court finds that respondents have waived their argument that the claims in the first amended petition are untimely because they do not relate back to the original petition. As such, the claims in the first amended petition are deemed timely, whether by the application of equitable tolling to the first amended petition or by respondents' waiver of the relation back argument.

As the second amended petition is virtually identical to the first amended petition and the first amended petition is, effectively, timely, the claims in the second amended petition relate back to a timely petition. The motion to dismiss the second amended petition as untimely will therefore be denied.

**Procedural Default**

Respondents argue that Grounds 1(B), Three, Four and Five are procedurally defaulted because they were raised for the first and only time in a petition dismissed by the state courts as untimely, successive and an abuse of the writ. Petitioner asserts that the procedural default of all claims may be excused on the basis of actual innocence or his mental limitations, the default of Ground Four may be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and Ground Five is not procedurally defaulted.

5

A. Mental Impairments

The Ninth Circuit has not decided whether there are any situations in which mental incompetence could provide cause for a procedural default, but it has held that a petitioner would not in any event be able to demonstrate cause where he "on his own or with assistance remain[ed] 'able to apply for post-conviction relief to a state court.'" *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) (citing *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986)). Further, any such exception could not apply "where a mental defect had less of an adverse effect on the petitioner's ability to comply with state procedures than illiteracy would have had." *Id.*

In *Hughes*, the Ninth Circuit rejected as cause that petitioner was illiterate and the inmate who had been helping him was released before petitioner needed his assistance. *Hughes*, 800 F.2d at 909. In *Tacho v. Martinez*, the Ninth Circuit held that a petitioner who was "borderline mental defective" who had help from incompetent counsel and jailhouse lawyers could not establish cause. *Tacho*, 862 F.2d 1376, 1381 (9th Cir. 1988).

Petitioner's cause argument is foreclosed by *Tacho*, which held that whether petitioner's "borderline mental defective" status was more or less of a restriction on petitioner's ability to file than illiteracy would have been was irrelevant because the petitioner at all times had assistance – albeit from "incompetent" attorneys and jailhouse lawyers. *See id.* If cause cannot be established where a petitioner who functions in the borderline mental defective range had the help of incompetent attorneys and jailhouse lawyers, it cannot be established where, as here, petitioner functions in the borderline

6

range[2] and had the help of possibly ineffective attorneys.

Petitioner argues that *Tacho* is distinguishable because Tacho was literate and had the ability to monitor the assistance he was receiving while petitioner here could not. However, petitioner has not shown or even argued that he is illiterate. In fact, the evidence on the record is that he can read, albeit at a sixth grade level. (Ex. 101 at 12). At most the evidence suggests that he may have had limitations in monitoring the assistance he was receiving, but this was not a factor in the court's decision in *Tacho* and is therefore not dispositive. Even if petitioner were illiterate, however, it remains that petitioner had assistance.

Here, petitioner, who functions in the borderline range like the petitioner in *Tacho*, had assistance for all of his state post-conviction petitions, like the petitioner in *Tacho*, cannot establish cause on the basis of his mental limitations, like the petitioner in *Tacho*. (*See* Ex. 101 at 24-25). Ninth Circuit precedent thus forecloses a finding of cause in this case.

B. *Martinez*

Petitioner argues that he can establish cause for the default of Ground 4 on the basis of *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the United States Supreme Court created a narrow, equitable rule that allows petitioners to, in some cases, establish cause for a procedural default where their post-conviction counsel rendered ineffective assistance by failing to raise in initial-review collateral proceedings a substantial claim of ineffective assistance of trial counsel. *Id.* at 16-17. Respondents argue that petitioner

---

[2] Dr. Llorente found petitioner functions categorically in the borderline range. (See Ex. 101 at 24-25).

7

cannot rely on *Martinez* because (1) petitioner's claim of ineffective assistance of post-conviction counsel is procedurally defaulted; (2) petitioner has not shown that post-conviction counsel's ineffectiveness was the cause for the untimely filing of the petition the state court found procedurally barred; and (3) petitioner has not and cannot show post-conviction counsel was ineffective.

Respondents cite no authority for the proposition that the underlying ineffective assistance of post-conviction counsel claim asserted for *Martinez* purposes must be exhausted, much less that it can be barred as procedurally defaulted.[3] Moreover, the Nevada Supreme Court's finding that the petition in this case was procedurally barred had no effect on petitioner's claim of ineffective assistance of post-conviction counsel because petitioner raised no such claim in his petition. (*See* Ex. 134). Accordingly, the court is not persuaded by the respondents' argument in this regard.

Respondents also cite no authority for their argument that petitioner must show that post-conviction counsel's ineffectiveness was the cause for the untimely filing of his third state habeas petition. That argument is taking the *Martinez* cause argument one step too far. Rather, the question is whether post-conviction counsel's ineffectiveness was the reason a claim was not raised in a timely and procedurally proper petition and appeal. Under *Martinez*, a petitioner may argue that a procedurally defaulted claim should have been raised in initial review collateral proceedings and post-conviction counsel was ineffective for failing to do so. Whatever happens subsequent to

---

[3] In fact, given that such a claim is generally not cognizable as an independent claim and will only ever be able to be raised after the first post-conviction proceedings, any such requirement would appear to be futile.

8

that failure is irrelevant for the purposes of this analysis.

As to respondents' last arguments, whether petitioner has a substantial claim of ineffective assistance of trial counsel and whether post-conviction counsel was ineffective for failing to raise it are questions that are intertwined with the merits of the claim itself. The consideration of these questions is thus best left for a full merits review. Accordingly, the court will defer the cause and prejudice analysis under *Martinez* until merits review. Respondents shall raise all relevant arguments with respect to the *Martinez* cause and prejudice issue in their answer.

C. Ground Five

Ground Five asserts a claim that, in light of *Miller v. Alabama*, 567 U.S. 460 (2012), petitioner's life sentence for conduct committed as a juvenile violates the Eighth Amendment's proscription against cruel and unusual punishment. Rather than argue cause for the purported default of this claim, petitioner argues that the claim is not procedurally defaulted.

The Nevada Supreme Court addressed the merits of Ground Five by finding that *Miller* does not entitle petitioner to relief. The claim is not therefore procedurally defaulted.

D. Actual Innocence

As to Grounds 1(B) and Three, as well as Ground Four in the event *Martinez* does not supply cause, petitioner argues that he can demonstrate actual innocence to excuse his defaults. Specifically, petitioner asserts that because he was sentenced to a term of life without the possibility of parole for acts committed as a juvenile and because Supreme Court precedent renders unconstitutional such sentences, he is actually innocent of his life without parole

sentence.

Putting aside the question of whether one can be innocent of a noncapital sentence,[4] it is clear that no law, at this juncture at least, necessarily renders petitioner's sentence unconstitutional. In *Graham v. Florida*, the Supreme Court held that a sentence of life without parole imposed on a juvenile for a nonhomicide offense is cruel and unusual punishment in violation of the Eighth Amendment. 560 U.S. 48, 82 (2010). Later, the Supreme Court concluded in *Miller v. Alabama* that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. 460, 465 (2012).

In both cases, the Supreme Court emphasized that the Constitution requires individualized sentencing for defendants facing the most serious penalties. In *Miller*, the Court noted the evolution of a foundational principle that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id.* at 474. It further held that "*Graham*'s reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses" and that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 473 & 479.

While *Graham* and *Miller* show how federal constitutional law continues to evolve in relation to juvenile offenders, they do not

---

[4] Respondents argue that "actual innocence" cannot apply to a noncapital sentence. However, at most the issue is undecided and there is certainly a reasonable question as to whether the exception might apply to a sentence of life without the possibility of parole imposed on a juvenile offender, as the Supreme Court has likened such sentences to the death penalty. *See Miller*, 567 U.S. at 475.

10

hold categorically that life sentences without the possibility of parole imposed on juveniles are unconstitutional.

Petitioner committed two murders and thus his sentence is not prohibited by *Graham*. Nor does petitioner's sentence violate *Miller*, as he was not sentenced pursuant to a sentencing scheme that mandated life without the possibility of parole. *See* Nev. Rev. Stat. § 200.030(4)(b). Although petitioner attempts to come within *Miller*'s purview by arguing that because he agreed to a sentence of life without the possibility of parole pursuant to a binding plea agreement, his sentence was "mandatory," the court is not persuaded. Petitioner's agreement to a sentence is not the same as a sentence imposed pursuant to a mandatory sentencing scheme.[5] Furthermore, the petitioner received an individualized sentencing hearing. In fact, before reciting the facts of petitioner's crime and petitioner's own history – criminal and otherwise – the trial court stated: "[I]f the Court ever seen [sic] a crime that warranted the death sentence, this would be such a crime." (Ex. 21 (Tr. 18)).

As there is no Supreme Court case categorically barring petitioner's sentence to life in prison without the possibility of parole for crimes committed as a juvenile, "actual innocence" cannot excuse the default of Grounds 1(B), Three and Four.

**Conclusion**

In accordance with the foregoing, **IT IS THEREFORE ORDERED** that respondents' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**

---

[5] Whether *Martinez* could be extended to a situation where the guilty plea was conditional, or binding, on the court that sentenced petitioner and thus was effectively mandatory is an issue that might justify the grant of a certificate of appealability in this case, if and when it is necessary for the court to reach that issue.

11

as follows:

1. The motion to dismiss the petition as untimely is **DENIED**;
2. The motion to dismiss Grounds One(B) and Three as procedurally defaulted is **GRANTED**;
3. The court defers consideration of the *Martinez* cause and prejudice analysis as to Ground Four until merits review;
4. The motion to dismiss Ground Five as procedurally defaulted is **DENIED**.

**IT IS FURTHER ORDERED** that respondents file an answer to all remaining claims in the petition within sixty (60) days of the date of this order. The answer must include substantive arguments on the merits as to each remaining ground in the petition, as well as respondents' procedural default argument with respect to Ground Four. Respondents must comply with the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and shall specifically cite to and address the applicable state court written decision and state court record materials, if any, regarding each claim within the response as to that claim.

IT IS FURTHER ORDERED that petitioner may file a reply within sixty (60) days of service of an answer.

IT IS FURTHER ORDERED that any state court record and related exhibits filed herein by either petitioner or respondents shall be filed with a separate index of exhibits identifying the exhibits by number. The CM/ECF attachments that are filed further shall be identified by the number or numbers of the exhibits in the attachment. If the exhibits filed will span more than one ECF Number in the record, the first document under each successive ECF Number shall be either another copy of the index, a volume cover page, or some other

12

document serving as a filler, so that each exhibit under the ECF Number thereafter will be listed under an attachment number (i.e., Attachment 1, 2, etc.).

IT IS SO ORDERED.

DATED: This 20th day of August, 2018.

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE